IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL MORTGAGE
WAREHOUSE, LLC,

v.  Civil Action No. CCB-00-2881

BANKERS FIRST MORTGAGE CO.,
INC., et. al.

SOVEREIGN BANK,

v.  Civil Action No. CCB-01-057

BANKERS FIRST MORTGAGE CO.,
INC., et. al.

**CONSOLIDATED UNDER**
**Civil Action No. CCB-00-2881**

## MEMORANDUM

This action arises from a mortgage lending scheme between a local mortgage lender, Bankers First, and a title agent, Title Express, Inc., to defraud national mortgage lenders of millions of dollars by submitting loan documents for nonexistent borrowers and using the funds advanced for private gain.[1] It is undisputed that both Kent Baklor, the president of Bankers First,

---

[1] National Mortgage Warehouse ("NMW") and Sovereign Bank were the two mortgage lenders defrauded as a result of this scheme. These lenders extended a line of credit to Bankers First for the purpose of funding residential mortgages. For each loan it wanted funded, Bankers was required to submit a written request for an advance, together with unsigned, but otherwise complete, copies of documents that were to be signed at closing. NMW and Sovereign would then wire the funds to Title Express, Trikeriotis' title agency. Trikeriotis was supposed to close the loans by obtaining necessary signatures and disbursing the money to the residential loan borrowers. Bankers First was expected to repay the national lenders after finding a third party

and Christopher Trikeriotis, the president of Title Express and general counsel for Bankers First, knowingly participated in the scheme. *See United States v. Christopher Trikeriotis*, Crim. No. CCB-01-0442 (D. Md. Sept. 21, 2001) (defendant pleads guilty to bank fraud and admits to details of crime in a statement of facts); *United States v. Kent Baklor*, Crim. No. CCB-01-0336 (D. Md. Aug. 3, 2001) (defendant pleads guilty to bank fraud). The plaintiffs are National Mortgage Warehouse ("NMW") and Sovereign Bank ("Sovereign"). The defendants are Bankers First, Title Express, Kent Baklor, and Christopher Trikeriotis. Now pending is Trikeriotis's motion for summary judgment on the legal malpractice claims filed against him by Bankers First, Kent Baklor, Kent Baklor's wife, Diane Baklor, and her company, What's Up Doc Document Prep, Inc. ("WUD").[2] The motion has been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, Trikeriotis's motion will be granted in part and denied in part.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

investor willing to purchase the loans.
 Unbeknownst to NMW and Sovereign, Bankers First and Title Express created and submitted several loan packages for nonexistent borrowers and kept for themselves the monies wired in response. NMW and Sovereign have sued them to recoup over six million dollars in losses. On January 15, 2002, this court entered judgment in favor of NMW and Sovereign Bank and against Trikeriotis and Title Express, jointly and severally. *National Mortgage Warehouse v. Bankers First, et. al.*, Civ. Action. No. CCB-00-2881 (D. Md. 2002). Both Trikeriotis and Baklor have pled guilty in criminal proceedings.

[2] Diane Baklor and WUD filed a counterclaim against Christopher Trikeriotis for legal malpractice following his third-party claim against them (Docket No. 17); Kent Baklor and Bankers First filed a three-count cross-claim against Christopher Trikeriotis and Title Express, which included a claim for legal malpractice. (Docket No. 18.)

2

> show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), but it also must abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## ANALYSIS

In an action for legal malpractice, a claimant must prove (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that the neglect resulted in and proximately caused the client's injury. *See Cavacos v. Sarwar*, 545 A.2d 46, 48 (Md. 1988); *Glasgow v. Hall*, 332 A.2d 722, 724 (Md. App. 1975) (*quoting Md. Casualty Co. v. Price*, 231 F.3d 397, 401 (4th Cir. 1916)).

Trikeriotis asserts that the malpractice claims cannot be maintained against him because the mandatory certification requirement set forth in MD. CODE ANN. CTS. & JUD. PROC. 3-2C-02

has not been satisfied. Section 3-2C-02 requires a plaintiff suing a "licensed professional" for malpractice to file with the court a certificate from a qualified expert "attesting that the licensed professional against whom the claim is filed failed to meet an applicable standard of professional care." *Id.* The statute defines a "licensed professional" as an architect, interior designer, landscape architect, professional engineer, professional land surveyor, or property line surveyor. MD. CODE ANN. CTS. & JUD. PROC. § 3-2C-01(c). Thus, § 3-2C-02, by its terms, is inapplicable to the present case. Moreover, in determining whether an attorney's conduct violates the standard of care, expert testimony is unnecessary "where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *Homa v. Friendly Mobile Manor, Inc.*, 612 A.2d 322, 328-29 (Md. App. 1992) (*quoting Fishow v. Simpson*, 462 A.2d 540 (1983)). If the violation is obvious, the testimony of an expert is not required. *Id.* (*citing Central Cab Co., Inc. v. Clarke*, 270 A.2d 662 (Md. 1970)).

Trikeriotis's more persuasive argument is that Kent Baklor and his company, Bankers First, were wilful and knowing participants in the fraud about which they complain. The injury they suffered was caused by their own intentional misconduct, not by Trikeriotis providing faulty legal advice. Accordingly, the motion for summary judgment on the legal malpractice claim brought by Kent Baklor and Bankers First will be granted.

Trikeriotis also contends that Mrs. Baklor and WUD cannot maintain a claim for malpractice because he never represented them. The record reflects a genuine dispute of fact about the scope of Trikeriotis's representation of Diane Baklor. In her deposition, Mrs. Baklor did not recall being represented "personally" by Trikeriotis except in two unrelated matters. (*See* Def. Mot. for Sum. Judgm., Ex.3, dep. of D. Baklor.) The excerpt submitted, however, does not contain any direct question about representation in connection with the matters constituting the

underlying fraud. The Baklors have submitted a letter from Trikeriotis in which he acknowledges an agreement to represent both of them. The letter, dated February 2, 1995, states in pertinent part:

> This is to confirm that I have agreed to represent Bankers First as well as you and Dianne, individually, on an initial retainer basis of Five Hundred Dollars ($500.00) per month.

(*See* Mem. in Opp., Ex. C.) The underlying fraud in this case was committed by Trikeriotis during the course of rendering services under this agreement. Recognizing that "an agreement upon the amount of a retainer and its payment is rather conclusive evidence of the establishment of the attorney-client relationship," *Central Cab*, 270 A.2d at 666, the court will not grant summary judgment on this basis.[3] On the other hand, however, Trikeriotis's assertion that he never represented Mrs. Baklor's corporation is supported by her deposition statements, and is not contradicted by other evidence. The court will therefore grant Trikeriotis's request for summary judgment on WUD's malpractice claim.

    A separate order follows.

_9/06/02_  
Date

_Catherine C. Blake_  
Catherine C. Blake  
United States District Judge

---

[3] Trikeriotis also maintains that Mrs. Baklor cannot sue him for malpractice because she has not been sued by Sovereign Bank or NMW as a result of the mortgage lending scheme. A client alleging legal malpractice, however, is not required to show that she has been sued for her attorney's negligence; she need only show an injury that was proximately caused. Thus, the court will not foreclose her malpractice claim against Trikeriotis, particularly considering that she and her company have been sued by Trikeriotis.