IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL MORTGAGE            *
WAREHOUSE, LLC
                               *

     Plaintiff
                               *

v.
                               *     Case No.: CCB 00 CV 2881

BANKERS FIRST MORTGAGE CO.,
INC., et. al.                   *

     Defendants
                               *

            *     *     *     *     *     *     *

## OPPOSITION TO DIANE BAKLOR'S MOTION FOR RECONSIDERATION

Now come Christopher Trikeriotis and Title Express, Inc. (collectively "Trikeriotis"), two of the Defendants, Cross-Claimants and Third Party Plaintiffs, by their attorneys, Andrew Radding, David B. Applefeld and Adelberg, Rudow, Dorf & Hendler, LLC, and, file this Opposition to the Motion for Reconsideration filed on behalf of Diane Baklor, and for reasons, state:

1.     Having failed to comply with each deadline set by this Court during a September 29, 2003 conference call, Diane Baklor has filed a Motion for Reconsideration of this Court's January 22, 2003 Order on the grounds that her present counsel forgot to enter his appearance in this case. The Motion should be denied.

2.     On August 22, 2003, counsel for Trikeriotis wrote to this Court advising that the parties had been unable to effectuate a settlement of the remaining claims and requested that the Court set a trial date.   At that time, counsel also advised this Court that certain discovery issues remained open.

3.     Thereafter, on September 29, 2003, this Court held a conference call with counsel. Mr. White, present counsel for Diane Baklor, participated in that conference call.   During the call the Court set the following deadlines: 1) October 10, 2003 - Trikeriotis to file a letter with the Court

outlining any open discovery issues which the Court needed to resolve; 2) October 20, 2003 - Diane

Baklor or any other party to file a response and/or opposition to the discovery issues addressed by

Trikeriotis; 3) November 30, 2003 - Diane Baklor to file a Motion for Summary Judgment, if at all;

3) May 7, 2004  - Pre-Trial Conference ; and 4) June 1, 2004 - Trial.  Hence, as of September 29,

2003, Ms. Baklor and her counsel were aware of the deadlines imposed by the Court.

      4.      Subsequently, on September 30, 2003, this Court forwarded a letter confirming these

dates to undersigned counsel and to counsel for Ms. Baklor.

      5.      On October 10, 2003, in compliance with the deadlines set by the Court, counsel for

Trikeriotis filed a letter with the Court outlining the open discovery issues which needed resolution.

Those issues included the continuation of the deposition of Diane Baklor as had previously been

agreed to by counsel, the discovery of any settlement agreements between the Plaintiff banks and

any past or current parties to the litigation, and the discovery of the amount of funds, if any, paid

pursuant to any such settlement agreement.

      6.      No objection was filed to the requests made by Trikeriotis in the October 10, 2003

correspondence and no Motion for Summary Judgment was filed by Ms. Baklor within the time

period mandated by the Court.

      7.      On January 19, 2004, counsel for Trikeriotis wrote to the Court pointing out that no

objection had been filed to the discovery issues raised in the October 10, 2003 letter and that the

deadline for Ms. Baklor to have filed her Motion for Summary Judgment had passed.

      8.      On January 22, 2004, Mr. White entered his appearance in the case for Ms. Baklor

and requested additional time to respond on her behalf to the issues raised in the October 10, 2003

letter.

9.      On January 22, 2004, this Court entered an Order granting Trikeriotis leave to complete the deposition of Diane Baklor and compelling production of the requested settlement agreements (with the condition that these agreements be used only for purposes of this litigation).

10.     On January 26, 2004, Ms. Baklor filed a Motion for Reconsideration arguing that, because her current counsel did not enter his appearance in the case until late January, 2004, she should be permitted additional time to respond.

11.      It should be noted that Ms. Baklor's current counsel participated in the September 29, 2003 conference call and therefore was aware of the deadlines imposed by the Court.  Likewise, it appears from Ms. Baklor's Motion that her counsel of record prior to January 22, 2004 received all electronic filings, including the October 10, 2003 letter about which Ms. Baklor now wishes to respond.

12.     It is not the fault of Trikeriotis that Ms. Baklor's current counsel did not enter his appearance in the case, or that Ms. Baklor's prior counsel did not respond.  Hence, for these reasons the Motion for Reconsideration should be summarily denied.

13.     Notwithstanding the foregoing, it is clear that Trikeriotis is entitled to the additional discovery outlined in the October 10, 2003 letter.

14.     Initially, the deposition of Ms. Baklor needs to be completed.

15.     Ms. Baklor confuses the facts surrounding the taking of her deposition, and it is important that these facts be clarified.

16.     Ms. Baklor's deposition was noted in this case by the Plaintiff, National Mortgage Warehouse, LLC.   The first day of the deposition was April 10, 2001.   Thereafter, the deposition was continued until April 11, 2001.  During the entire first day and most of the second day, all questioning was done by counsel for National Mortgage Warehouse, LLC.   At the conclusion, on the second day of the deposition, counsel for Trikeriotis requested that the deposition be re-set

promptly.  It is this quotation which Ms. Baklor takes completely out of context to give the Court the inaccurate impression that Trikeriotis somehow sat on his right to complete the deposition for three (3) years.  The deposition was re-set for the first agreeable date (August 14, 2001-approximately two (2) weeks before the formal close of discovery).  The deposition that day lasted only three and one half (3 ½ ) hours.

17.     At the conclusion of the August 14, 2001 session, it was agreed that counsel for Trikeriotis would be permitted to continue the deposition for an additional three (3) hours if the case could not be resolved.  In reaching this agreement, it was contemplated by all counsel that the continued deposition (if necessary)  would have to take place after the formal close of discovery, since it was unlikely that the parties would have been able to finalize any settlement within the short time period remaining.

17.  As reflected in the pages from Ms. Baklor's deposition transcript attached to counsel's August 22, 2003 letter, the parties agreed to an additional three hours to complete the deposition. *See* **Exhibit A**, Diane Baklor Deposition at 599-600.  Mr. White, Ms. Baklor's present counsel, was present at the deposition when that agreement was reached. The deposition was continued in the hope that the case could be resolved following the completion of the related criminal matter. Unfortunately, this has not occurred.  Since trial is now inevitable, this deposition needs to be completed as agreed to by counsel on the record.

18.     Ms. Baklor's suggestion that Trikeriotis has delayed in his attempt to re-set the deposition following the collapse of settlement discussions simply does not comport with the facts. Contrary to the suggestion of Ms. Baklor, Trikeriotis has been attempting to schedule the continuation of her deposition since October of 2002.  *See*, **Exhibit B**, Correspondence dated November 5, 2002; **Exhibit C**, Correspondence dated  November 13, 2002; **Exhibit D**,

Correspondence dated December 12, 2002; **Exhibit E**, Correspondence dated January 13, 2003; **Exhibit F**, Correspondence dated March 24, 2003; **Exhibit G**, Correspondence dated July 1, 2003; **Exhibit H**, Correspondence dated August 22, 2003; **Exhibit I**, Correspondence dated August 22, 2003.

19.     Trikeriotis has also requested copies of the settlement agreement(s) entered between Ms. Baklor, Mr. Baklor and their companies with the underlying Plaintiffs, National Mortgage Warehouse, LLC and Sovereign Bank. These documents fall squarely within the scope of the Request for Production served by Trikeriotis upon the Baklor parties in this litigation, and the Baklor parties have a continuing obligation to supplement their discovery responses. Among other documents, Trikeriotis specifically requested that these parties produce "all documents that relate to any contractual agreement between you and any party to this litigation." Requests for discovery are continuing in nature and require timely supplementation. In this case, this has not occurred.

20.     Counsel for Trikeriotis spoke to counsel for National Mortgage Warehouse, LLC about obtaining copies of these agreements several months ago and was advised that National Mortgage Warehouse, LLC had no objection to providing copies to Trikeriotis. Accordingly, as the Court will note, neither National Mortgage Warehouse, LLC nor Sovereign Bank has objected to Trikeriotis' legitimate discovery request.

21.     It is also interesting, to say the least, that Ms. Baklor fails to address the merits of this request. As pointed out in the October 10, 2003 letter to this Court, the settlement agreements are relevant to the damages issues in this case. Here, Title Express is being sued for indemnity and contribution, and Mr. Trikeriotis is being sued for indemnity, contribution, as well as, damages allegedly sustained by Ms. Baklor for professional negligence. Fundamental to evaluating this case is the ability to determine what damages, if any, the Baklor parties have sustained. Certainly, if the

Baklor parties have entered into settlement agreements with the lender Plaintiffs, both the terms of the agreements and the amount of money paid by each are directly relevant to the damage claims in this case.  Without the agreements and an accounting as to what has been paid, the defense is being forced to proceed in a vacuum.

22.    Moreover, the documents in question are believed to be both voluminous and complex.  Thus, merely showing a copy to Trikeriotis and/or his counsel is insufficient.  Rather, as reflected in the proposed Order signed by the Court on January 22, 2004, Trikeriotis intends to use the documents solely for purposes of this litigation, thus putting an end to any so-called fears of Ms. Baklor (the spouse and business partner of a "convicted felon").

23.    The terms and conditions of the Settlement Agreement(s) are also relevant to determine the outstanding liability of Trikeriotis with respect to the underlying claim. The Maryland Uniform Contribution Among Joint Tort-Feasor Act, MD. CODE ANN., CTS. & JUD. PROC. §3-1401, *et seq.* provides:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasor *unless the release so provides, but it reduces the claim against the other tort-feasor in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid*. (emphasis added).

To the extent any of the lender Plaintiffs have settled with the Baklor parties, Trikeriotis has the right to discover all of the applicable terms and conditions and to receive a copy of any settlement agreement.

24.    Any concern on the part of Ms. Baklor that the agreements will be used for an inappropriate purpose was addressed in this Court's January 22, 2004 Order, limiting the use of the agreements to purposes of this litigation.  Likewise, as previously offered by Trikeriotis, in an effort to resolve this issue, if the Baklor parties desire that a protective order be entered concerning any

settlement agreement with the lender Plaintiffs limiting the use of the agreement(s) to purposes of this litigation and any related litigation which may be filed once the agreements are produced and discovery on these issues has been completed, Trikeriotis has no objection to same. In fact, the Order signed by the Court on January 22, 2004 has this very protection.

25.    The final open issue which dovetails with the above dispute concerning the settlement agreement(s) involves the refusal of both the Baklor parties and the lender Plaintiffs to disclose to Trikeriotis what funds, or other things of value, have been paid by the Baklors and their companies in either settlement of the underlying civil case or pursuant to the restitution order entered in the criminal case over which this Court presided. In this case, the judgment entered in favor of the Plaintiff banks impose joint and several liability. Trikeriotis is clearly entitled to discover what the Baklors and their companies have paid to the lenders and the terms under which the Baklors have been permitted to continue to operate their business. The amount of funds or other things of value paid or transferred to the lenders is an element, if not the entirety of, the damages being claimed against Trikeriotis in the civil case, and is the subject of the restitution order entered in the criminal matter. Likewise, to the extent the Baklors have been permitted to maintain or transfer available assets which could be used to satisfy the civil judgment or the restitution order, this information is clearly discoverable. In this regard, Trikeriotis requests the opportunity to complete the deposition of National Mortgage Warehouse, Inc.'s designee which was also left open.

26.    Lastly, both the initial deadline for having filed summary judgment motions and the extended deadline imposed by this Court during the September 29, 2003 conference call with Mr. White have long since passed. To the extent Ms. Baklor had any legitimate basis to file such a Motion, it would and should have been filed within the time period prescribed by the Court of which

both Ms. Baklor and her various counsel were well aware. Under such circumstances, the deadline

should not again be extended.

WHEREFORE, Christopher Trikeriotis and Title Express, Inc. requests this Court to enter

an Order denying the Motion for Reconsideration, granting leave to complete the depositions of

Diane Baklor and the Designee of National Mortgage Warehouse, L.L.C., and ordering the

production of any settlement agreement(s) entered between National Mortgage Warehouse, LLC

and/or Sovereign Bank and any past or current party to this consolidated litigation.

ANDREW RADDING (#00195)
DAVID B. APPLEFELD (#08311)
ADELBERG, RUDOW, DORF & HENDLER, LLC
600 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, MD 21201
410/539-5195
Attorneys for Defendants, Christopher
Trikeriotis and Title Express, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **3rd** day of February, 2004, a copy of the foregoing

Opposition was served via fist class mail, post pre-paid and by electronic filing upon: Andrew C.

White, Esquire, Law Offices of Andrew C. White, LLC, 201 North Charles Street, Baltimore,

Maryland 21201, Walter Weir, Esquire, Weir & Partners, LLP, The Widener Building, Suite 500,

Philadelphia, Pennsylvania 19107, D. Christopher Ohly, Esquire, Blank, Rome, Comisky &

McCauley, 250 W. Pratt Street, Suite 1100, Baltimore, Maryland 21201 and John A. Bourgeois,

Esquire, Kramon & Graham,  P.A., 1 South Street, Suite 2600, Baltimore, Maryland 21202.

_____
DAVID B. APPLEFELD