IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NATIONAL MORTGAGE WAREHOUSE, LLC | * |
| v. | * Case No. CCB-00-CV-2881 |
| BANKERS FIRST MORTGAGE CO., *et.al* | * |

\* \* \* \* \*

### REPLY TO THIRD PARTY PLAINTIFFS' OPPOSITION TO DIANE BAKLOR'S MOTION FOR RECONSIDERATION

Third-party defendant Diane Baklor, through counsel, Andrew C. White and Susan Q. Amiot of the Law Offices of Andrew C. White, LLC, hereby replies to the Opposition to Diane Baklor's Motion for Reconsideration filed by Third Party Defendants, Christopher Trikeriotis and Title Express, Inc. (together "Trikeriotis"), on February 3, 2004.

### I. DIANE BAKLOR'S DEPOSITION

**A.  The request to continue the deposition should be denied because it is unreasonable given the significant lapse of time since August 14, 2001.**

Mr. Trikeriotis is correct that Mrs. Baklor's former counsel (John Bourgeois of Kramon & Graham) agreed on August 14, 2001 that Mrs. Baklor would be made available for an additional three hours of deposition testimony. In fact, undersigned counsel was present when that agreement was made. Mr. Trikeriotis acts as if this agreement ends the discussion. It certainly does not.

Since August 14, 2001, counsel for Mr. Trikeriotis made no attempt whatsoever to schedule the continuation of the deposition until well over one year later, when the thought was mentioned in passing to undersigned counsel at a Courthouse social event in late October of 2002. The suggestion that the parties implicitly agreed to this extent of

delay is simply wrong. For example, if Mr. Applefeld had stated on the record back in August of 2001 that the continuation of Mrs. Baklor's deposition would be set for some point at the end of *2002* or in 2003, there *never* would have been any agreement to do so. Implicit in the agreement was that Mrs. Baklor's deposition would be continued at a point reasonably soon in the future – not in late 2002, 2003, or 2004.

      B.      **The request to continue the deposition should be denied because it would be unduly prejudicial to Mrs. Baklor.**

As stated previously, Mr. Radding first raised the notion of continuing Mrs.Baklor's deposition in a passing comment to undersigned counsel at a social event at the U.S. Courthouse in late October of 2002. At that point, frankly, the thought of continuing the deposition was a surprise. Most counsel, including the undersigned, had believed that Mr.Trikeriotis' case was, for all practical purposes, finished when he pleaded guilty to the criminal fraud charges in September of 2001. Not only was the notion of continuing the deposition a surprise, but it also presented a very real threat to Mrs. Baklor inasmuch as Mr. Bourgeois had withdrawn from the case on October 16, 2002. The departure of Mr. Bourgeois left Mrs. Baklor without the attorney who was most familiar with her case and who had been present at her three prior depositions. Mr. Bourgeois had also invested hundreds of hours on the matter, and had represented Mrs. Baklor's interests at the numerous depositions throughout the course of this litigation in 2001. If Mrs. Baklor's deposition is permitted to be continued at this point, she will be forced to defend the deposition with a counsel who was not present for previous depositions and who has not invested the time necessary to competently represent her interests at this point. Again, if this potential circumstance had been contemplated by the parties at the close of Mrs. Baklor's deposition in August of 2001, there would have been no agreement to allow for continued questioning.

2

    C.    **The request to continue the deposition should be denied because no further discovery is necessary.**

Mr. Trikeriotis' argument that he should be allowed to continue Mrs. Baklor's deposition in furtherance of his claims presumes that he has valid claims at this point. He does not.

Mr. Trikeriotis' argument ignores the fact that on September 21, 2001, shortly after Mrs. Baklor's last deposition, he pleaded guilty in this Court to wire fraud – thus admitting that he knowingly and willfully stole millions of dollars from National Mortgage Warehouse and Sovereign Bank. After entering his guilty plea in the criminal case, Mr. Trikeriotis' position vis-à-vis Diane Baklor changed significantly. No longer was he just an alleged civil wrong-doer, but he was now an admitted and convicted felon.[1] Trikeriotis' pending claims against Diane Baklor consist of: indemnification and contribution (as Third Party Claims in both the suits originated by National Mortgage Warehouse and Sovereign Bank); defamation (in the National Mortgage Warehouse suit); and tortious interference with contract and civil conspiracy to interfere with contract (in the Sovereign Bank lawsuit). None of the claims are viable at this point.

    1)    **Indemnification**

First, as to indemnification, it is well established under Maryland law that a defendant may seek indemnification *only* when his liability is passive or secondary, which liability is rooted in the concept of imputed or constructive fault. *Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp 592, 596 (D. Md. 1985) (Young, J.), *aff'd*, 823 F.2d 548 (4th Cir. 1987). *See also Baltimore & Ohio R.R. Co. v. County Comm'rs of*

---

[1]    Mrs. Baklor has never been charged with any crime, *nor was she even sued by either National Mortgage Warehouse or Sovereign Bank.*

3

*Howard County*, 113 Md. 404, 414-16, 77 A. 930, 933-34 (1910); *Baltimore & Ohio R.R. Co. v. County Comm'rs of Howard County*, 111 Md. 176, 185-86, 73 A. 656, 658-59 (1909); *Westfarm Assocs. Ltd. Partnership v. International Fabricare Inst.*, 846 F.Supp. 422, 437-38 (D.Md.1993), *aff'd sub nom. Westfarm Assocs. Ltd. Partnership v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669 (4th Cir.1995), *cert. denied*, 517 U.S. 1103, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996); *Blockston v. United States*, 278 F.Supp. 576, 583-88 (D.Md.1968); *State v. Capital Airlines, Inc.*, 280 F.Supp. 648, 650 (S.D.N.Y.1964); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership*, 109 Md.App. 217, 277-80, 674 A.2d 106, 135-37 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997); *Schreiber v. Cherry Hill Constr. Co.*, 105 Md.App. 462, 478-79, 660 A.2d 970, 978-79, *cert. denied*, 340 Md. 500, 667 A.2d 341 (1995). "The determination of whether a tortfeasor's negligence is active or passive must be made by referring to the plaintiff's [original] complaint against the defendant seeking to implead the third party." *Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp at 596.  Here, National Mortgage Warehouse and Sovereign Bank alleged active involvement by Trikeriotis in fraud, deceit, and misrepresentation, which allegations have been confirmed by Mr. Trikeriotis' guilty plea to the federal fraud charge.  Mr. Trikeriotis, therefore, is an admitted active tortfeasor, and as a matter of law, cannot recover for indemnification from any other third party, including and especially Mrs. Baklor.

2) **Contribution**

The claim against Mrs. Baklor for contribution is also inappropriate at this juncture.  It is well established under Maryland law that in order to state a cognizable claim based on contribution, the third-party plaintiff joint tortfeasor (here, Trikeriotis) must have actually paid the entire claim or at least more than his *pro rata* share of the

4

liability. Until that time, there is simply no basis for a judgment of contribution. *See Baltimore County v. Stitzel,* 26 Md. App. 721, 728 (1975) (reversing a judgment that split the total liability to the plaintiff between two joint tortfeasors because the moving tortfeasor had not "paid the common liability or paid more than his *pro rata* share of that liability."); *see also Jackson v. Cupples*, 239 Md. 637 (1965); *Southern Maryland Oil Co. v. Texas Company*, 203 F. Supp. 449) (D.Md. 1962). As Judge Northrop wrote in *Southern Maryland Oil*, "the rights to both indemnification and contribution [under Maryland law], whether based on contract or tort, accrue at the time of payment ***and not before***." 203 F.Supp. at 452-53 (*citing O'Keefe v. Baltimore TransitCo.,* 201 Md. 345 (1953)) (emphasis added). Furthermore, Maryland Courts & Judicial Proceedings Article 3-1402 specifically provides that "A joint tort-feasor is not entitled to a money judgment for contribution until the joint tort-feasor has by payment discharged the common liability or has paid more than a pro rata share of the common liability.

Since being placed on supervised release in August of 2003, Mr. Trikeriotis has paid a total of eight hundred dollars (**$800**) toward his debt of $6,359,426.85 to National Mortgage Warehouse or Sovereign Bank. Even giving Mr. Trikeriotis the benefit of the doubt that he actually intends to repay the money he stole, it seems extremely unlikely that he will ever be able to pay the judgment against him or any amount close to a *pro rata* share. As a result, Trikeriotis' claim for contribution is simply not ripe, and his case should be dismissed without prejudice to refile the claim if and when he pays the entire judgment or more than his *pro rata* share.[2]

---

[2] The statute of limitations with respect to this claim will not even begin to run until Mr. Trilkeriotis has paid the judgment and established his entitlement to contribution. *See Southern Maryland Oil Co. v. Texas Company*, 203 F. Supp. 449) (D.Md. 1962).

### 3) Defamation

Mr. Trikeriotis' claim against Mrs. Baklor for defamation (Count III of the Amended Third-Party Complaint), alleges that on August 30, 2000, Mrs. Baklor defamed him when she told representatives of National Mortgage Warehouse Bank that Mr. Trikeriotis had "participated in and masterminded a scheme to defraud National Mortgage Warehouse, all of which Diane Baklor knew to be false."

A necessary element of any defamation claim is falsity of the statement. *Bagwell v. Peninsula Regional Med.,* 106 Md. App. 470, 510-11 (1995), *cert. denied,* 341 Md. 172 (1996). In this case, the truth of the statement by Mrs. Baklor was established beyond any doubt when Mr. Trikeriotis' pleaded guilty to defrauding national Mortgage Warehouse and Sovereign Bank. Therefore, his claim for defamation has no merit whatsoever, and one must ask whether there ever was a good faith basis for even making this claim.

### 4) Tortious Interference with Contract & Civil Conspiracy

Trikeriotis' final claims against Mrs. Baklor – those for tortious interference with contract and civil conspiracy to interfere with contract (Counts III and IV of the Third Party Claims in the suit initiated by Sovereign Bank) – have no merit for these same reasons. The claim for tortious interference with contract alleges that by submitting claims to Co-Defendant Security Title Guarantee Corporation of Baltimore ("Security") on several fictitious loans, Mrs. Baklor interfered with Title Express' contract for title insurance with Security. Trikeriotis, however, has already admitted to being part of the scheme to create the fictitious loans insured by Security, and he can hardly claim now that Mrs. Baklor is somehow liable for interfering with his criminal conduct.

6

Similarly, the claim that Mrs. Baklor conspired to tortiously damage Mr. Trikeriotis and his company, Title Express, cannot stand.  By pleading guilty to federal fraud charges, he has admitted that both he and Title Express carried out a blatant scheme to defraud National Mortgage Warehouse and Sovereign Bank.  It completely illogical that Mrs. Baklor could somehow be civilly liable for conspiring to cause damage to Mr. Trikeriotis and Title Express at a time when both were engaged in a criminal enterprise to defraud two banks out of almost $8.5 million.[3]

We discuss these issues to point out that allowing Mr. Trikeriotis to continue with his claims and perpetuate this case is simply permitting a continuing waste of Mrs. Baklor's -- and the Court's -- resources.   Because Trikeriotis' claims have no legal merit, he should not be allowed at this point to continue with depositions years past discovery deadlines and ultimately to waste court resources.[4]

---

[3]     It is important here to note the Court's prior ruling against Mr. Trikeriotis and Title Express on the motions for summary judgment by National Mortgage Warehouse and Sovereign Bank, in which the Court stated:

> Trikeriotis has pleaded guilty to bank fraud in connection with his transactions with Sovereign and NMW…. As part of his guilty plea, Trikeriotis agreed to a Statement of Facts which leave the material allegations in the NMW and Sovereign complaints undisputed…. Consequently, he is collaterally estopped from denying his liability…. Not only does Trikeriotis admit all of the essential elements of bank fraud by virtue of his plea, but the extensive statement of facts submitted in connection with the plea constitutes a full admission by him that he engaged in fraud against NMW and Sovereign Bank…. Since Trikeriotis is the president and chief officer or Title Express, his guilty plea also precludes his company from denying liability in connection with these transactions…. In his Statement of Facts [in his guilty plea], Trikeriotis concedes that NMW and Sovereign lost approximately 8.5 million dollars as a result of the fraud perpetuated upon them by, *inter alia*, Trikeriotis and Title Express.  That amount is consistent with the evidence of damages submitted by the plaintiffs.

Memorandum, January 15, 2002 (Court Paper No. 96) (footnotes and citations omitted).  In footnote 2 of that Memorandum, the Court ruled that Trikeriotis' request for additional time for discovery would be denied, stating that in light of the guilty plea, "no further discovery is necessary."  *Id.*

[4]     Not only should there be no further deposition of Mrs. Baklor, but the Court should also permit her to file a motion for summary judgment on all claims by Trikeriotis against her.

7

## II. PRODUCTION OF SETTLEMENT AGREEMENTS

Mrs. Baklor has offered consistently to provide Mr. Trikleriotis and his counsel with a copy of all settlement agreements for use in this litigation. The only requested limitation is that Mr. Trikeriotis not be allowed to maintain a copy of his own. Under this arrangement, Mr. Trikeriotis' counsel can make full and complete use of the agreements and have copies thereof. The Baklors will also be protected inasmuch as they will know that Mr. Trikeriotis cannot possess the documents and cannot attempt to wreak havoc by distributing copies to other persons or perhaps by "accidentally" allowing a copy to fall into the wrong hands. The Baklors have no interest whatsoever in denying Mr. Trikeriotis from legitimately knowing the substance of the settlement agreements and making appropriate use of this information in this case. The proposed solution, which has been on the table for many months, is reasonable and protects everyone's interests in a fair and equitable manner.

The fact that Mr. Trikeriotis has continuously refused the proposed offer and has insisted on having his own "personal copy" of the settlement agreements only exacerbates fears that he may, years down the road and after the end of his supervised release, use the documents in an inappropriate manner.

## III. CONCLUSION

Mrs. Baklor respectfully submits that the Court should appropriately reconsider its January 23, 2004 Order and disallow the further deposition of Diane Baklor. Mrs. Baklor further submits that the Court should modify its January 23rd Order and allow Mr. Trikeriotis access to all settlement agreements entered into with any past or current party to this case with the express condition that the agreements will remain in the possession

of Mr. Trikeriotis' counsel and that Mr. Trikeriotis will not receive copies of the documents for his personal use or possession.

        Respectfully submitted,

        _____/S/_____
        Andrew C. White
        Susan Q. Amiot
        Law Offices of Andrew C. White, LLC
        Suite 2600
        201 North Charles Street
        Baltimore, MD  21201
        410-576-2200

        **COUNSEL FOR DIANE BAKLOR**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of February, 2004, I sent a copy of the foregoing pleadings via Electronic Case Filing to all counsel of record, and by First Class U.S. Mail, postage prepaid, to the following:

David Applefeld, Esquire
Adelberg, Rudow, Dorf & Hendler
600 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

*Attorneys for Christopher Trikeriotis*

D. Christopher Ohly, Esquire
Blank, Rome
250 West Pratt Street
Suite 1100
Baltimore, MD 21201,

*Attorneys for National Mortgage Warehouse*

                                                              _____**/S/**_____
                                                              Andrew C. White