IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NATIONAL MORTGAGE WAREHOUSE, LLC,  :

    Plaintiff,  :

    v.  :  Civil Action No. CCB-01-CV-3275

BANKERS FIRST MORTGAGE CO, et al.  :

    Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM IN OPPOSITION
TO MOTION OF THIRD PARTY AND CROSS-COMPLAINT
PLAINTIFF CHRISTOPHER TRIKERIOTIS'
MOTION FOR CONTEMPT AND SANCTIONS**

Judgment was entered against Christopher Trikeriotis in this case, long ago, in favor of the Plaintiffs, National Mortgage Warehouse, LLC, and Sovereign Bank. At the time judgment was entered, the Rules relating to pre-trial discovery, including those relating to production of documents, became inapplicable to any further proceedings between Mr. Trikeriotis and the Plaintiffs. The only discovery that remains available is that afforded by Rule 69 (and through that Rule, the other discovery rules), which permits discovery by *the Plaintiffs* in aid of execution of their judgment. That Rule specifically provides that "the judgment *creditor* … may obtain discovery from any person, including the judgment debtor," in aid of execution. It gives *no* right to the judgment debtor to obtain any discovery whatsoever.[1]

---

[1] Indeed, although Mr. Trikeriotis may have directed discovery to the Plaintiffs before judgment against him was rendered, there has been no effort to serve the Plaintiffs with any discovery *after* judgment against him was entered, even as a third party to the dispute he continues to have with Ms. Baklor. Contrary to Mr. Trikeriotis' implicit or explicit assertions, once a judgment has been rendered against a party,

1

This case has been turned on its head by the judgment debtor, Christopher Trikeriotis. He has paid nothing to the Plaintiffs in satisfaction of their judgments. He has not offered any settlement proposal to liquidate his liability to the Plaintiffs. He has not paid any restitution, through the Courts, as far as the Plaintiffs know, in compliance with the Judgment of Conviction rendered against him in his criminal prosecution. He has done everything in his power to create the illusion of cooperation with the Court, and to shift his own liability to others, or avoid paying anything at all.

The Plaintiffs entered into settlements, long ago, with several parties and non-parties to this litigation. They offered long ago to enter into a settlement with Mr. Trikeriotis. *See* Letter from D. Christopher Ohly to Andrew Radding, dated July 25, 2002, and attached draft settlement agreement, attached as Exhibit 1. Mr. Trikeriotis has refused every effort by the Plaintiffs to reach an amicable agreement concerning the method and amount of payments that he might make in satisfaction of the Plaintiffs' judgments. The proposed settlement agreement between the Plaintiffs and Mr. Trikeriotis was, in form, similar to others into which the Plaintiffs had entered, but accounted for differences between Mr. Trikeriotis and those others who had willingly come to terms with the Plaintiffs.

Mr. Trikeriotis has insisted that he be provided with a copy of the settlement agreement concluded by the Plaintiffs with Kent Baklor, Dianne Baklor and American Lending Corporation, before he would even consider entering into any kind of settlement discussions with the Plaintiffs, claiming throughout that he wanted to be treated identically with the Baklors, even though his situation may be different. His counsel, Mr. Radding, was afforded the opportunity, long ago, to review a full copy of the Baklor agreements, and to take notes about those agreements, but not to

---

proceedings are terminated, and no further obligation exists to supplement discovery served prior to judgment.

take a copy of them.  Following a deposition of Mr. Trikeriotis, taken at the Morgantown Correctional Institution in the course of litigation against Joyce Trikeriotis, his wife, counsel for National Mortgage Warehouse outlined the terms of the Baklors' agreements and informed Mr. Trikeriotis that agreements with others had been concluded, on terms different from those with the Baklors which accounted for the differences in their economic situation, litigation risks and relative culpability.  Even after these disclosures, Mr. Trikeriotis vehemently insisted on provision of a copy of the Baklors' settlement agreements as a condition of any discussion about liquidation of his judgment liability.

The Baklors have, to date, complied or attempted to comply with their settlement obligations.  They have paid monies under the terms of their settlement agreements.  Mr. Baklor has made some payments of restitution, through the Courts, that have been forwarded to the Plaintiffs.

Until recently, Mr. Trikeriotis was represented by counsel.  From the pleadings that Mr. Trikeriotis has filed, it is clear that his counsel, Mr. Radding and Mr. Applefeld, were provided copies of certain settlement agreements by counsel for Dianne Baklor, although, for reasons not explained in his pleading, Mr. Trikeriotis claims "that Baklor has not produced all of the documents that comprise her settlement agreements with Plaintiffs …"  In particular, he contends that he has hot been provided with copies of Consent Judgments, which he assumes were executed by Ms. Baklor.  No such documents exist.

The Court's Order provides that copies of settlement agreements between the Plaintiffs and others should be provided to Mr. Trikeriotis' counsel, and *not* to Mr. Trikeriotis.  Contemporaneously, Mr. Trikeriotis' former counsel filed motions to withdraw their appearances from this case, which have now been granted.  Since Mr. Trikeriotis is no longer represented by counsel, it is not possible for the Plaintiffs to provide to Mr. Trikeriotis' lawyers (he has none) the documents which Mr. Trikeriotis seeks.

Neither National Mortgage Warehouse nor its counsel meant or intended any disrespect for the Court's Order, nor did they mean in any respect to fail to comply with its terms. Neither is in contempt, and neither should be sanctioned.[2]

To ensure that the Court's Order is met, counsel for National Mortgage Warehouse have filed with the Court, under seal, copies of the following:

(a) A Letter Agreement between the Plaintiffs and the firm of Eisenberg, Levy & Kotik, dated March 14, 2001 (Exhibit 2);

(b) A settlement agreement between the Plaintiffs and Timothy Burgess, dated March 3, 2004 (Exhibit 3);

(c) Identical settlement agreements separately executed by the Plaintiffs (only signatures are different), with Kenneth Baklor, dated November 5, 2001 (Exhibit 4); and

(d) Identical settlement agreements separately executed by the Plaintiffs (only signatures are different), with Dianne Baklor and American Lending, with related documents, dated March 27, 2002 (Exhibit 5).[3]

Counsel for National Mortgage Warehouse have *not* served these exhibits on Mr. Trikeriotis, but will provide copies of these documents to any counsel whom Mr. Trikeriotis may hereafter

---

[2] Contrary to the representations made by Mr. Trikeriotis, counsel for National Mortgage Warehouse have never been contacted by Mr. Trikeriotis, either telephonically or otherwise, in an effort to comply with the requirements of good faith in resolving discovery disputes, before filing the present Motion. Counsel received the letter dated March 9, 2004, addressed to him by David Applefeld. Following that letter, counsel mistakenly assumed that the provision of the Dianne Baklor agreement by her counsel was, in fact, all that Mr. Trikeriotis desired to obtain under the terms of the Order entered by the Court.

[3] Counsel for National Mortgage Warehouse understands, based upon a conversation with counsel for Sovereign Bank on April 28, 2004, that, as of that date, they had not been served with any of the pleadings relating to this matter that have been served on National Mortgage Warehouse's counsel. Nevertheless, based on that conversation with counsel for Sovereign Bank, counsel for National Mortgage Warehouse understands that Sovereign Bank's counsel will file with the Court, under seal, a copy of any written agreement that might exist between Sovereign Bank and National Mortgage Warehouse concerning this litigation.

retain to represent him in this litigation.  If the Court deems it appropriate, National Mortgage Warehouse will, of course, provide Mr. Trikeriotis with copies of these documents, as well.

From the pleadings that Mr. Trikeriotis has filed, it appears that the only remaining claims at issue among these parties are Mr. Trikeriotis' claims against the Baklors for contribution.  There are no claims by Mr. Trikeriotis against the Plaintiffs, and none by the Plaintiffs against Mr. Trikeriotis that have not been adjudicated.  The agreements between the Plaintiffs and the several parties, other than Mr. Trikeriotis, who have agreed to pay the Plaintiffs some monies to satisfy judgment obligations, or potential judgment obligations, do not even come close to compensating the Plaintiffs for the very significant losses that they have suffered.  Their continued involvement in this litigation, by Mr. Trikeriotis' obstinate insistence on pursuing vengeful claims against the Baklors, and by his refusal to recognize in any serious manner his own responsibility for paying, and not simply dividing (or avoiding), the judgment entered against him, is only further insult to the Plaintiffs, adding to the injuries they have already suffered by Mr. Trikeriotis' crimes.

What liability Mr. Trikeriotis might have to the Plaintiffs, after recognition of the payments made by Ms. Baklor, Mr. Baklor, Tim Burgess and Eisenberg, Levy & Kotik, is readily calculable and enormous.  Little has been paid and, when post-judgment interest is computed, Mr. Trikeriotis owes more now than he did before any of these payments were made.  Whether Mr. Trikeriotis will be able to realize some reduction of his own liability, by virtue of payments made by others, seems unlikely.  The payments made by others do not entitle Mr. Trikeriotis to contribution from them; it entitles those others to contribution from him.

Mr. Trikeriotis should no longer be allowed to turn this case on its head.  He should, at last, recognize his own responsibility and propose some means to pay (i) the criminal restitution he has been ordered to make; and (ii) the judgments in favor of the Plaintiffs, that terminated the litigation

between the Plaintiffs and Mr. Trikeriotis.  His Motion for Contempt or for Sanctions should be denied.

                                              Respectfully submitted,

                                          _____/s/_____
                                          D. Christopher Ohly