**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **NATIONAL MORTGAGE WAREHOUSE, LLC** | * | |
| **v.** | * | **Case No. CCB-00-CV-2881** |
| **BANKERS FIRST MORTGAGE CO., *et.al*** | * | |

* * * * *

**REPLY TO OPPOSITION TO THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Third-party defendants Diane Baklor and What's Up Doc Document Prep Co., through counsel, Andrew C. White and Susan Q. Amiot, hereby replies to the Opposition to Motion for Summary Judgment filed by Christopher Trikeriotis in the above captioned case.

## I. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THERE IS NO DISPUTE OF MATERIAL FACT AND JUDGMENT IS WARRANTED AS A MATTER OF LAW

Summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure is appropriate if the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). For purposes of summary judgment, a fact is material if, when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248. Similar to the standard for a directed verdict, if "under governing law, there can be but one reasonable conclusion," summary judgment should be granted. *Lucas v. Curran*, 856 F.Supp. 260 265 (D. Md. 1994) (Smalkin, J.) (citing *Anderson*, 477 U.S. at 250).

**A. There is no evidence to indicate that Diane Baklor was a joint tort-feasor with Mr. Trikeriotis.**

**1. Evidence adduced in the discovery process.**

In this case, there simply is no competent evidence that Mrs. Baklor or What's Up Doc are in any way responsible for the harm done to National Mortgage Warehouse (NMW) or Sovereign Bank (Sovereign). In fact, each former Bankers First employee who was questioned during the discovery process in this case testified that Chris Trikeriotis ran all phases of Bankers First Mortgage during the period of the fraud scheme.[1] Kent Baklor also testified that Mr. Trikeriotis and he carried off the fraud scheme, which was planned by Mr. Trikeriotis, without the knowledge of Diane Baklor. *See Memorandum in Support of Diane Baklor's and What's Up Doc's Motion for Summary Judgment Against Third Party Plaintiffs Christopher Trikeriotis and Title Express, Inc.* at , page 13. *See also Exhibit H to the Verified Memorandum in Support of Third Party Plaintiff Christopher Trikeriotis' Response in Opposition to Diane Baklor's and What's Up Doc's Motion for Summary Judgment Against Third Party Plaintiffs Christopher Trikeriotis and Title Express, Inc.* (wherein Mr. Baklor testifies that he did not let his wife know about the fraud scheme being perpetrated by himself and Mr. Trikeriotis.)

In fact, throughout the entire discovery process in this case, there was no testimony adduced to establish that Mrs. Baklor was in any way involved in the fraud scheme against National Mortgage Warehouse and Sovereign Bank.[2] It is also telling

[1] For example, Banker's First employees Bruce Tharp, Sharon White, Dorothy Pumputis, all testified that Mr. Trikeriotis ran the show at BFM during the time of the charged fraud scheme. None of these witnesses testified that Diane Baklor was in any way involved in Mr. Trikeriotis' scheme to defraud the banks in this case. *See Memorandum in Support of Diane Baklor's and What's Up Doc's Motion for Summary Judgment Against Third Party Plaintiffs Christopher Trikeriotis and Title Express, Inc.*, pp. 13-14.

that after a lengthy investigation carried on through the discovery process in this case, neither NMW nor Sovereign ever named Mrs. Baklor in a lawsuit or made her a party to the fraud claim against her husband and Mr. Trikeriotis.[3] It is also important to note that it was *Mrs. Baklor* who, upon learning of the scheme, hired counsel and insisted that her husband report the case to authorities. *See Deposition of Diane Baklor, April 11, 2001, at pp. 384-387.*

Notably, on March 19 and 20, 2001 Mr. Trikeriotis had an opportunity to testify at a deposition in this case. He initially answered a series of questions relating to Title Express. *See* NMW's Motion for Summary Judgment Ex. B (Deposition of Mr. Trikeriotis), at 101, 115-16. When asked about the allegations of NMW's Complaint, and when confronted with documentary evidence of the fictitious loans that NMW was fraudulently induced to make, Mr. Trikeriotis invoked his privilege against self-incrimination and refused to answer any more questions. *Id.* at 314-17.

**2. Mr. Trikeriotis' Memorandum is insufficient to defeat the Motion for Summary Judgment.**

In an attempt to raise a question of fact sufficient to overcome the pending Motion for Summary Judgment, Mr. Trikeriotis has promised to the Court that he

> will produce at trial sufficient evidence that will show that Baklor knew that the fraud was ongoing, that she was an active participant in and director of the fraudulent activities that she was the beneficiary of thousands of dollars of the fraudulently obtained fund, and that without Baklor's company's involvement (Third Party Defendant What's Up Doc), the fraud could not have been perpetrated.

---

2 This is so despite the fact that Mrs. Baklor sat for three days of questioning and was questioned extensively by counsel for Mr. Trikeriotis. For the record, Mrs. Baklor has consistently and adamantly maintained her innocence and she denies having anything to with the scheme to defraud NMW and Sovereign.

3 Contrary to the suspicion raised by NMW officials at the outset of the investigation, Mrs. Baklor was not found to have had a role in the fraud perpetrated against them.

*Verified Memorandum in Support of Third Party Plaintiff Christopher Trikeriotis' Response in Opposition to Diane Baklor's and What's Up Doc's Motion for Summary Judgment Against Third Party Plaintiffs Christopher Trikeriotis and Title Express, Inc.* at p. 6. He goes on to state that fraudulent documents were prepared with Mrs. Baklor's knowledge on software licensed to What's Up Doc, Inc. *Id.* at 9. Trikeriotis also claims that at an undated meeting he met with Mrs. Baklor and her husband and "it was agreed that the fraud would be continued. . ." *Id.* [4]

This is patently insufficient to establish a genuine issue for trial. An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial*." (Emphasis supplied) *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). In this case, a vague promise to produce evidence at a future trial, coupled with unsubstantiated conclusions and recollections of undated conversations is plainly insufficient to satisfy his burden under *Anderson*.

**3. Mr. Trikeriotis' Memorandum should be stricken because he invoked his Fifth Amendment privilege during his deposition.**

Even if the Court finds that Mr. Trikeriotis' Verified Memorandum is sufficient to raises a genuine issue of fact, the Court should disregard the allegations and strike the memorandum because of his refusal to answer any questions regarding the fraud scheme against NMW and Sovereign during his deposition. As the Fourth Circuit has noted: "the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements [in relation to] a

[4] Mr. Trikeriotis also mentions a check written to Diane Baklor in the amount of $5,000 which he claims was used as a loan to her former boyfriend. It is unclear how the existence of this check in any way suggests that Mrs. Baklor was knowingly involved in a fraud scheme involving false and phony loans.

summary judgment motion." *In Re. Edmond*, 934 F.2d 1304 (4th Cir. 1991). In that case, the defendant in a civil action brought by the Maryland Attorney General's Office, moved for summary judgment and offered his own affidavit in support of his motion. The Maryland Attorney General's Office objected because the defendant had previously asserted his Fifth Amendment privilege throughout the discovery process. *Id.* at 1306. The trial court disregarded the defendant's affidavit and denied his motion for judgment. *Id.* at 1307. The Fourth Circuit affirmed the trial court's ruling.

In it's opinion, the Fourth Circuit stressed that affidavits submitted on summary judgment do not deserve to receive unthinking acceptance by a trial court, especially where the affiant had previously refused to answer questions by invoking the Fifth Amendment privilege. *Id.* at 1308. The court noted that in the context of cross-examination, courts have routinely stricken testimony where the defendant has refused to submit to cross-examination by invoking the Fifth Amendment. *Id.* The *Edmond* court went on to rule that "[t]he same principle applies when a party seeks to invoke the Fifth Amendment to avoid discovery while offering an affidavit to compel a certain result on summary judgment." *Id.* Other courts, both State and federal, have reached the same conclusion. *See United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990)(district court had "ample authority" to strike defendant's affidavit in opposition to a summary judgment motion where the defendant had invoked the Fifth Amendment and refused to answer deposition questions.); *United States v. Real Property and Premises Known as 4408 Hillside Court*, 966 F.2d 1445 (4th Cir. 1992)(unpublished opinion )(a defendant who risks incrimination by speaking will inevitably face the choice of forsaking silence or losing a civil judgment, even if the defendant's silence is not used against him.); *Pack v. Beyer*, 157 F.R.D. 219 (D. N.J. 1993)(parties must choose to assert a privilege and be

barred from using that information at summary judgment or at trial, or they must disclose information and thus be able to use the evidence at a later disposition on the merits.); *Kramer v. Levitt*, 558 A.2d 760 (Md. App. 1989)(when a defendant in a Maryland civil action pleads his privilege against self-incrimination in response to discovery requests, he is prohibited from testifying at trial on matters pertaining to these requests.)

In this case, the notion that Mr. Trikeriotis can continue in his third party suit as a plaintiff while steadfastly refusing to testify at a deposition in that very suit is outrageous. It was his decision to bring the lawsuit in the first place and he can hardly be heard to complain about dismissal of the suit following his refusal to testify at a deposition.

With the affidavit removed from consideration, Trikeriotis cannot meet his burden of establishing the existence of a genuine issue of material fact to defeat summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Indeed, the singular weight of the evidence adduced in this case dictates the conclusion that the fraud scheme against NMW and Sovereign Bank was designed and carried out by Mr. Trikeriotis and Mr. Baklor, without the knowledge or participation of Mrs. Baklor.[5] Accordingly, this Court should grant the pending Motion for Summary Judgment.

## II. THE PENDING THIRD PARTY CLAIM FOR CONTRIBUTION SHOULD BE DISMISSED BECAUSE THE RIGHTS OF THE PARTIES TO THE ORIGINAL SUIT HAVE BEEN COMPLETELY ADJUDICATED.

Mr. Trikeriotis claims that his third party claims against Diane Baklor and What's Up Doc should be allowed to proceed to trial because doing so would consistent with the "very result Rule 14 is intended to achieve." He goes on to argue that the "underlying purpose of Rule 14 is to consolidate suits that should be tried together so as to avoid

[5] With respect to What's Up Doc, Mrs. Baklor testified in her deposition that, because of an illness and subsequent operation, she was not involved with the day-to-day operations of the company after the Spring of 1995. Deposition of Diane Baklor, April 10, 2001, at p. 63-64. In fact, Mrs. Baklor testified at the deposition that after her illness, she was "forced out" of the offices of What's Up Doc. At that point, Mr. Trikeriotis took control of the document preparation work. *Id. at 52.*

circuity and multiplicity of action in the interest of saving time of the courts, parties and witnesses, and to avoid unnecessary expense." Trikeriotis' Memorandum at p. 17. While it can certainly be said that Rule 14 is meant to foster these goals, allowing this case to proceed would turn Rule 14 on its head.

It bears repeating that Mr. Trikeriotis does not yet have a recognized claim under Maryland law for contribution because he has not yet paid more than his pro rata share of liability to NMW and Sovereign, and neither victim has been made whole. In fact, such a claim for contribution does not even accrue for statute of limitations purposes until such a payment has been made. *Washington Suburban Sanitary Commission v. Riverdale Heights Volunteer Fire Department*, 520 A.2d 1319 (Md. 1987). While the third-party defendants concede that such a claim appears to be allowable under Rule 14, at least one court has ruled that a claim for contribution in circumstances similar to this case cannot be impleaded under Rule 14. *See Brooks v. Brown*, 307 F.Supp. 907 (E.D. Va. 1969).[6] We point this out only to emphasize that this third party suit could not even be brought in state court at this point. Accordingly, it cannot be argued that judicial economy is served by allowing this permissive state court claim to be litigated in federal court before its time. Given that it is also very unlikely that Mr. Trikeriotis will ever be able to pay a *pro rata* share of the over $6,000,000 judgment in favor of NMW and Sovereign, allowing this case to proceed under Rule 14 would be to require substantial and scarce federal court resources to adjudicate a right that will *never* be established.

Moreover, this Court should vacate its previous order allowing Mr. Trikeritois' suit because the rights of the parties to the original suit have been completely adjudicated. Both NMW and Sovereign Bank have substantial judgments against both Mr. Trikeriotis

[6] *See Brown v. Shredex, Inc.*, 69 F.Supp. 764 (D.S.C. 1999) and *Bell v. Federal Reserve*, 57 F.R.D. 632 (E.D. Va. 1972). Both of these cases stand for the proposition that Rule 14 can permit the litigation of inchoate claims for contribution notwithstanding state law to the contrary.

and Mr. Baklor, and those cases have been adjudicated and completed. All that is left now is a separate controversy between Mr. Trikeriotis and the third party defendants, between whom there is no diversity of citizenship. It is certainly within the sound discretion of the Court to vacate this claim under these circumstances. *See Duke v. Reconstruction Finance Corp.*, 209 F.2d 204 (4th Cir. 1954)(affirming district court's vacation of order allowing impleading of third parties where rights of the parties to the original suit had been adjudicated, leaving only a controversy between non-diverse parties).

## II. CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of Diane Baklor and What's Up Doc on all of the third party claims brought against them by Mr. Trikeriotis and Title Express, Inc. In the alternative, this Court should vacate its previous order allowing impleader of Mrs. Baklor and What's Up Doc as improvidently granted under the circumstances of this case.

Respectfully submitted,

/S/

Andrew C. White
Susan Q. Amiot
Law Offices of Andrew C. White, LLC
Suite 2600
201 North Charles Street
Baltimore, MD 21201
410-576-2200

**COUNSEL FOR DIANE BAKLOR**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June, 2004, I sent a copy of the foregoing pleading to Christopher Trikeriotis, 14915 Dunstan Lane, Monkton, Maryland 21111.

__________/S/_______________
Andrew C. White