IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL MORTGAGE<br>  WAREHOUSE, LLC | |
| v. | Civil No. CCB-00-2881<br>CCB-01-0057 |
| BANKERS FIRST MORTGAGE CO., et. al | |

## MEMORANDUM

Christopher Trikeriotis filed a third party complaint alleging that Diane Baklor ("Baklor") and What's Up Doc Document Prep, Inc. ("What's Up Doc") were joint tortfeasors in the fraud committed by Trikeriotis and Kent Baklor, Baklor's husband, against National Mortgage Warehouse ("NMW") and Sovereign Bank ("Sovereign"). Trikeriotis is seeking contribution[1] from Baklor and What's Up Doc on the amounts he owes to NMW and Sovereign. In response, Baklor and What's Up Doc filed a motion for summary judgment.[2] They deny that they should be liable as joint tortfeasors because they claim that they did not knowingly participate in the fraud. Having reviewed the parties' briefs, I have concluded that Trikeriotis has failed to produce competent evidence that either Baklor or What's Up Doc wilfully

---

[1]In addition to his contribution claims, Trikeriotis initially included claims for indemnity, defamation, tortious interference with contract, and conspiracy in his third party complaint against Baklor and What's Up Doc. The only remaining claim, however, is his contribution claim because Trikeriotis filed a Stipulation of Dismissal with Prejudice with respect to all of the other claims.

[2]This court will allow the untimely filing of the motion for summary judgment by both Baklor and What's Up Doc because of the lack of any unfair prejudice to Trikeriotis.

participated in the fraud perpetrated against NMW and Sovereign. Accordingly, I will grant Baklor's and What's Up Doc's motion for summary judgment.³

## BACKGROUND⁴

Trikeriotis's contribution claim stems from a fraud in which Trikeriotis and Kent Baklor defrauded NMW and Sovereign out of millions of dollars. Both Trikeriotis and Kent Baklor have already pleaded guilty to criminal charges based on their conduct. In addition, NMW and Sovereign brought a civil claim against Trikeriotis. On January 15, 2002, this court entered summary judgment against Trikeriotis on NMW's and Sovereign's fraud, deceit, and misrepresentation claims for six million dollars, the full amount of their losses. Trikeriotis brought the current third party plaintiff contribution claims against Baklor and What's Up Doc alleging that they were joint tortfeasors in the fraud.

As evidence in support of his claims that Baklor was a knowing participant in the fraud, Trikeriotis points to a settlement Baklor reached with NMW and Sovereign,⁵ an ambiguous letter he wrote to the Baklors that he claims should have alerted her to the fraud,⁶ (Trikeriotis's Ex. G),

---

³I will assume, without deciding, that under Fed. R. Civ. P. 14, Trikeriotis can bring this contribution claim, even though he has not yet paid his pro rata share of the liability. *See* Wright, Miller & Kane, 6 Fed. Prac. & Proc. Civ. 2d § 1448. Furthermore, Baklor's motion to strike Trikeriotis's affidavit will be denied without prejudice, though if this claim were going forward I would allow Baklor to resume the deposition of Trikeriotis.

⁴The Statement of Facts accompanying Trikeriotis's guilty plea provides a more complete discussion of the facts. (Trikeriotis's Ex. B).

⁵The settlement agreement between NMW, Sovereign, and Baklor has been filed with the court under seal. I have examined a copy of the agreement, and find it contains no admissible evidence indicating that Baklor was a knowing participant in the fraud.

⁶In his attempt to demonstrate that Baklor was aware of the ongoing fraud, Trikeriotis describes a meeting he had with Kent and Diane Baklor on April 27, 2000, that was memorialized the following day in a letter. (Trikeriotis's Ver. Mem. at 11). In this letter to the

and a memorandum from Joe Doyle, a representative of NMW, which states that Baklor must have been aware of the fraud.[7] (Trikeriotis's Ex. I). While he produced some evidence indicating that Baklor may have known about the fraud, Trikeriotis produced no evidence that Baklor actually participated in the fraud. Furthermore, Baklor claims that once she became aware of the fraud, she was the one who actually convinced her husband to contact the authorities. (Baklor's Reply to Opp. at 3).

To support his contribution claims against What's Up Doc, Trikeriotis argues that under Baklor's guidance, What's Up Doc provided the document preparation work for the fraudulent mortgages. (Trikeriotis's Ver. Mem. at 9-11). What's Up Doc was involved in preparing the fraudulent loan packages and received substantially all of its income from Bankers First. (Trikeriotis's Ex. B). There is no evidence, however, that What's Up Doc was aware of the ongoing fraud in preparing the documents. Trikeriotis argues that What's Up Doc had knowledge of the fraud through Baklor, who he claims was running the day-to-day operations of

---

Baklors, Trikeriotis wrote
> you are unwilling to take any responsibility for your actions nor are you willing to do that which is necessary to rectify the situation in which you have found yourselves. Refusal to take any responsibility for the current financial situation of BFM and your refusal to admit to any knowledge of said situation and the fact of how you have funded the business and your exorbitant lifestyles during the past three years, leaves me no choice but to resign immediately... Every penny that you both have spent during the last three years has been as a result of loans made and nothing more.

(Trikeriotis's Ex. G). Based on this meeting and the accompanying letter, Trikeriotis claims that Baklor must have been aware of the fraud by April 28, 2000 at the latest. (Trikeriotis's Ver. Mem. at 12).

[7]In his memorandum, Joe Doyle stated "[t]here was a clear effort to distance Mrs. Baklor from any involvement in the scheme. I am sure, however, that she had knowledge of the matter but I do not know when or whether she had any involvement." (Trikeriotis's Ex. I). This does not constitute admissible evidence that Baklor or What's Up Doc knowingly participated in the fraud.

What's Up Doc.  Trikeriotis, however, produced no evidence regarding Baklor's participation at What's Up Doc.  Furthermore, Baklor notes that after she became ill in 1995, she was no longer in day-to-day control of What's Up Doc.  She alleges that at the time of the fraud, Trikeriotis was actually controlling What's Up Doc.  (Baklor's Reply to Opp. at 6, FN 5 (citing Baklor Dep. at 63-64)).

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To succeed on his contribution claims, Trikeriotis must produce evidence that Baklor and What's Up Doc knowingly participated in the fraudulent scheme perpetrated by Trikeriotis and Kent Baklor. *See Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (Md. 1994) (stating that "[i]n order to recover damages in an action for fraud or deceit, a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth..."). With respect to Baklor, summary judgment is appropriate because Trikeriotis has not proffered competent evidence that she participated in the fraud. Similarly, the motion for summary judgment should be also granted with respect to What's Up Doc because Trikeriotis failed to offer any competent evidence indicating that What's Up Doc had knowledge of the fraudulent scheme or acted with a reckless indifference to the truth.

Even when viewed in the light most favorable to Trikeriotis, there is no genuine issue of material fact sufficient to take these claims to trial.[8]

A separate Order follows.

---

[8] All claims by Title Express, Inc., which has failed to have new counsel enter an appearance, also will be dismissed.

<u>February 28, 2005</u>                              /s/_____
Date                                              Catherine C. Blake
                                                  United States District Judge